UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PENNY MCGEE-GRANT, individually,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE, a foreign insurer,<br><br>Defendant. | Case No. C14-1989RSM<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BAD FAITH CONDUCT |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Penny McGee-Grant's Motion for Partial Summary Judgment, Dkt. #23. Plaintiff moves for summary judgment on her claim that Defendant American Family Mutual Insurance ("AmFam") acted in bad faith under state law when it "withheld, denied and/or limited payments of claims prior to the completion of its claims investigation." *Id.* at 1. AmFam opposes this Motion, arguing that its actions were justified under the circumstances and do not rise to the level of bad faith. *See* Dkt. #27. For the reasons set forth below, the Court GRANTS Plaintiff's Motion for Summary Judgment.

//

//

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
BAD FAITH CONDUCT - 1

## II.     BACKGROUND

On July 13, 2012, Plaintiff McGee-Grant was rear-ended by another vehicle while driving her Kia Sedona. *See* Dkt. #28-1 at 12.

Plaintiff was insured under an AmFam liability policy that included personal injury protection ("PIP") coverage. *See* Dkt. #24 at 12. This PIP policy provided Plaintiff coverage for "reasonable and necessary expenses incurred by or on behalf of an insured person for injuries sustained as a result of an automobile accident for health care services." *Id.* at 9. Plaintiff notified AmFam of the potential claim, and on July 24, 2014, she was sent an application for PIP benefits and an authorization for the release of medical information. *Id.* at 12.

On July 23, 2012, Plaintiff visited Sound Family Medicine for examination. *See* Dkt. #28-1 at 8-11. Plaintiff presented with right shoulder pain. *Id.* at 8. Plaintiff's "Right Shoulder Exam" indicated the following:

> Abduction ROM: Normal
> Int. Rotation ROM: Normal
> Ext. Rotation ROM: Normal
> Forward Lifting ROM: Normal
> Tender: Over deltoid bursae, over trapexius
> Impingement: No pain with Abduction and int. rotation.

*Id.* at 11. For her shoulder injury, the doctor recommended rest, ice, compression and elevation as well as anti-inflammatory drugs for pain relief. *Id.* at 8.

On August 8, 2012, Plaintiff sent AmFam her application for PIP benefits, Dkt. #28-1 at 18-19, and a medical records release form, Dkt. #24 at 15.

On October 1, 2012, Plaintiff presented to Tammy C. D'Souza, D.O. with ongoing shoulder pain related to her motor vehicle accident. Dkt. #24 at 19. An MRI was recommended. *Id.* On October 23, 2012, the MRI was performed and showed a full thickness

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BAD FAITH CONDUCT - 2

to nearly full-thickness rotator cuff tear in Plaintiff's right shoulder. Dkt. #28-1 at 20. On November 20, 2012, Plaintiff met with Wendy Heusch, D.O. to discuss the injury and treatment options. Dkt. #24 at 6. Plaintiff contacted AmFam on December 3, 2012, to provide notice that she would be having surgery later in January. *Id.* at 28.

On December 4, 2012, Vicky Zerull, AmFam's Claims Manager supervising Plaintiff's PIP claim, noted that "medical bills should be denied pending IME as this is a relatedness issue." *Id.* at 31. The independent medical exam ("IME") was delayed for various reasons. Dkt. #23 at 8-9; Dkt. #27 at 2 ("American Family ordered the MRI film so that an independent medical examination could be taken. For reasons unknown to American Family there was difficulty in obtaining the films.") Because of the delay, AmFam decided to contact treating surgeon Wendy Heusch, D.O. to obtain her opinion on whether the rotator cuff tear and shoulder surgery were related to the motor vehicle accident. Dkt. #27 at 6. On January 3, 2013, AmFam sent a letter to Dr. Heusch asking two questions:

> …please provide your opinion on how the right shoulder injury is related to the motor vehicle accident of July 13, 2012…. Can you tell from her MRI if the right shoulder rotator cuff tear is an old injury or caused from this motor vehicle accident?

Dkt. #28-2 at 2. That same day, Ms. Zerull's notes reiterate the previous contention that bills should be denied: "per my 12-4-12 notes we should be denying bills for relatedness until we have an IME or MCR done." Dkt. #24 at 25. On January 15, 2013, Dr. Heusch responded by dictating a letter to AmFam stating the rotator cuff tear and shoulder surgery were related to the July 2012 accident, noting:

> A tear would be consistent with her mechanism of injury where she quickly threw her arm out to the side to protect a small child in the back seat. I do think that the AC joint arthritis is pre-existing and unrelated to the injury. It is asymptomatic at this time.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BAD FAITH CONDUCT - 3

Dkt. #24 at 6. Although it is clear that Dr. Heusch addresses AmFam's first question explicitly, she also implicitly addresses AmFam's second question by first affirming that the rotator cuff tear is consistent with the motor vehicle accident and also stating that "[w]e specifically talked about prior injury to her shoulder… 15 years ago… resolved without problems…. I do think that the AC joint arthritis is pre-existing and unrelated to the [motor vehicle] injury." *Id.* After receiving and reviewing this letter, AmFam decided that a records review would be necessary "given the conflicting versions of injury and the conflicting exams 3 months apart..." Dkt. #24 at 23.

Plaintiff's shoulder surgery occurred on January 21, 2013. Dkt. #24 at 39. Plaintiff contends that AmFam denied subsequent medical bills pending the records review. Dkt. #23 at 10; *see also* Dkt. #24 at 39 (Medical Bill List for "Grant, Penny" showing $2,619.90 "paid" with $32,538.28 billed as an "Allowed Amt"). AmFam eventually obtained a records report from Dr. Dara Parvin that concluded that the cause of Plaintiff's shoulder disorder was that of "normal/usual wear and tear," and closed Plaintiff's PIP Claim on March 19, 2013. Dkt. #28-1 at 23.

### III.   DISCUSSION

#### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*,

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BAD FAITH CONDUCT - 4

Inc., 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B. Analysis**

Plaintiff's Motion seeks partial summary judgment solely on Plaintiff's state law claim of bad faith. Dkt. #23.

RCW 48.01.030 requires insurers to act in good faith, stating that "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." "An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992).

Plaintiff argues that an insurer may act in bad faith either by violating regulations defining unfair claims settlement practices, or by violating its quasi-fiduciary duties to the insured and third parties under Washington's common law of bad faith, citing *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*,165 Wn.2d 122, 196 P.3d 664 (2008) (bad faith for violation of insurance regulations) and *Van Noy v. State Farm Mutual Ins. Co.*, 142 Wn.2d 784, 791, 16 P.3d 574 (2001) (bad faith for breach of quasi-fiduciary duties, including "(1) the duty to

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BAD FAITH CONDUCT - 5

disclose all facts that would aid its insureds in protecting their interests; (2) the duty of equal consideration; and (3) the duty not to mislead its insureds."). Plaintiff points to several applicable Washington State regulations. WAC 284-30-330 defines unfair claims settlement practices constituting bad faith, including "misrepresenting pertinent facts or insurance policy provisions," "failing to adopt and implement reasonable standards for the prompt investigation of claims," and "refusing to pay claims without conducting a reasonable investigation."[1] WAC 284-30-370 requires every insurer to "complete investigation of a claim within thirty days after notification of claim, unless such investigation cannot reasonably be completed within such time." WAC 284-30-380 requires insurers to state the specific grounds when a claim is denied.

Plaintiff argues that AmFam's refusal to pay was unfounded because the claims adjuster simply did not "have the information and expertise to deny a claim where the treating physician vouche[d] for the reasonableness, necessity, and relatedness of the treatment, and the claims adjuster ha[d] no IME/records review to displace that opinion." Dkt. #23 at 14. Plaintiff also argues that AmFam's failure to communicate the basis for its refusal to pay for several months constitutes bad faith. Dkt. #23 at 16-17.

In its Response, AmFam argues that "As long as the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, an insured is not entitled to base a bad faith or CPA claim against its insurer on the basis of a good faith mistake," citing *Coventry v. American States Ins. Co.*, 136 Wn.2d 269, 280, 961 P.2d 933 (1998). Dkt. #27 at 10. AmFam argues that bad faith is a question of fact, citing *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 150 Wn.2d 462, 470, 78 P.3d 1266

---

[1] Plaintiff argues that "[t]he scope of abuses covered by WAC 284-30-330 reaches beyond final denial to any communicated refusal to pay." Dkt. #23 at 16.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BAD FAITH CONDUCT - 6

(2003). Dkt. #27 at 9-10.[2] AmFam argues that there were several good faith mistakes on its part accounting for the delay in conducting its investigation, most notably the inability to obtain the MRI films. Dkt. #27 at 14. AmFam admits that it is "probably true" that "more could have been done to follow up with the records retrieval company." *Id.* AmFam argues that, even if it was not "reasonably prompt" in conducting an investigation within 30 days, few other insurers would be able to accomplish such a feat. Dkt. #27 at 11.

On Reply, Plaintiff cites to *Indus. Indem. Co. v. Kallevig*, 114 Wn.2d 907, 917, 792 P.2d 250 (1990) for the proposition that "[a]n insurer does not have a reasonable basis for denying coverage and, therefore, acts without reasonable justification when it denies coverage based on suspicion and conjecture." Plaintiff rebuts AmFam's claim of good faith mistakes accounting for the investigation delay by pointing out that the investigation took 107 days, arguing that AmFam took too long to even order an IME, and that AmFam could easily have relied on the answers from Dr. Heusch to conclude its investigation. Dkt. #31 at 6.

The parties agree that AmFam was required to "make a good faith investigation of the facts before denying coverage." *See* Dkt. #27 at 10-11. Here, there is no dispute that AmFam denied payment without an IME and prior to receiving Dr. Parvin's report based on a perceived "relatedness issue," *i.e.* AmFam's belief that the right shoulder injury was not related to the motor vehicle accident, but was instead caused by a prior injury. *See* Dkt. #24 at 25. In briefing, AmFam points to several "facts" that led to the belief that there was a relatedness issue: "[t]he delayed onset of symptoms and treatment are inconsistent with a torn tendon;" "[u]ndisputed pre-existing degenerative changes in the shoulder provides a plausible counter explanation for symptoms;" "[i]nitial examinations did not reveal a torn tendon;" "Plaintiff

---

[2] However, the Court notes that the same case states in the following sentence that summary judgment *is* appropriate on the issue of bad faith if "there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances…" *Am. States*, 150 Wn.2d at 470.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE:
BAD FAITH CONDUCT - 7

continued to work as hairdresser, which requires significant movement of the shoulder." Dkt. # 27 at 12. However, none of these assertions are supported by citations to the record showing that these statements are medically valid or showing that AmFam knew of these facts prior to denying coverage. Rather, these assertions appear to be based on suspicion and conjecture. The Court finds that the only bases that AmFam could have for denying coverage prior to March 19, 2013, were Plaintiff's existing medical records and the January 15, 2013, letter from Dr. Heusch. Although AmFam argues that Dr. Heusch failed to answer questions about the relatedness of the injury to the motor vehicle accident, and characterizes her answers as implausible, the Court finds that Dr. Heusch unequivocally answered that the rotator cuff injury *was* related to the motor vehicle accident. Further, the fact that Plaintiff's July 23, 2012, exam showed less of an injury than the subsequent October 1, 2012, exam does not by itself cast doubt on the relatedness of the injury to the motor vehicle accident. Given all of this, the Court finds that AmFam violated WAC 284-30-370 as a matter of law by failing to complete its investigation within 30 days when it reasonably could have done so. The Court further finds that AmFam acted in bad faith as a matter of law by concluding that there was a relatedness issue without a medical basis and deciding to refuse payment prior to an IME or records review.

Although Plaintiff has proven AmFam acted in bad faith, Plaintiff has not proven her damages from this claim. Plaintiff requests in her Motion "contractual damages of $7,380.10," however, this bad faith claim sounds in tort, *Safeco Ins. Co. v. Butler*, *supra*, Plaintiff has presented no evidence or argument as to contractual damages, and Plaintiff argues that "[a]ll tort damages should be reserved for trial." Dkt. #23 at 22. The Court thus reserves its ruling on Plaintiff's bad faith damages for trial.

### IV.   CONCLUSION

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BAD FAITH CONDUCT - 8

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

1) Plaintiff's Motion for Partial Summary Judgment, Dkt. #23, is GRANTED as stated above.

2) The Court reserves its ruling on bad faith damages for trial.

DATED this 12 day of January, 2016.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE